IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 04-03140-01-CR-S-DW |
| STEVEN GOSLEE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motions to Suppress. The government has responded to both.

In his first Motion to Suppress, defendant seeks suppression of evidence and statements based on an unlawful search of his business on July 26, 2004. He contends that the search warrant was overbroad; that it was defective because the application and affidavit were not properly sworn to and verified; and that all statements and evidence should therefore be suppressed. In the second Motion to Suppress, defendant seeks suppression of evidence and statements based on an unlawful search of his residence on July 27, 2004. He contends that the search warrant was issued without the requisite probable cause; that it was defective because the application and affidavit were not properly sworn to and verified; that the officers exceeded the terms of the warrant by seizing evidence lawfully in the possession of defendant and not authorized to be seized in the warrant; and that all statements and evidence should therefore be suppressed.

A hearing was held before the undersigned on April 28, 2005. Defendant was represented

by counsel, Stacie Bilyeu. Assistant United States Attorney Rose Barber appeared for the government.

The government first called Sergeant Mike Stuart of the Missouri State Highway Patrol. He received a telephone call on a Saturday, on July 24, 2004, at his residence, from an informant[1] who wanted to provide information on defendant. The informant, Mr. Nuckles, said that he did not want to talk on the telephone, so they met in person. He was an employee at defendant's business. He told Sergeant Stuart that defendant was heavily involved in drug trafficking and drug use. He also thought defendant was hiding a stolen trailer at his business. Mr. Nuckles said there was a perfectly good trailer there that had the tongue cut off and had brush over it, and it looked like defendant was trying to hide it in the woods. He also believed that defendant had a stolen hay rack because defendant had him cut off the serial number. Mr. Nuckles offered the officer a disposable camera with which he had taken pictures of the trailer he believed had been stolen. He also mentioned that he felt there were tires at defendant's business that were stolen. He thought this because he saw them being unloaded, and he never saw any paperwork on the tires. This was not a normal way of doing business, in his opinion. Officer Stuart testified that he was not exactly sure when he was told about the stolen tires, and that he may have gotten this information later in another conversation with Mr. Nuckles. He kept the camera in his possession and had the pictures developed the following Monday. The pictures were of a tandem axle trailer inside a shop bay. It had the tongue cut off, brush still over the bed of the trailer, and there was a Missouri license plate on the back.

It was Officer Stuart's testimony that he did not immediately seek a search warrant, but rather, conducted some further investigation. He had two undercover task force officers go to

---

[1] The undersigned ordered that the name of the informant, Shawn Nuckles, be disclosed as a material witness.

defendant's business, under the pretense of wanting to buy metal, to see if they could locate the trailer, which they did. He also contacted the Wright County Sheriff's Department to check if they had a report on a stolen trailer. They did, regarding a trailer stolen from an Alvin Mackey. They faxed him a copy of the trailer description. The Wright County Sheriff told him they had a suspect, and said it was defendant. Officer Stuart then contacted the victim, and showed him a copy of the photographs. Mr. Mackey said that it was, in fact, his trailer. He also showed the undercover officers a copy of the photographs, and they indicated it was same trailer they had seen moments before in the garage bay of Westgate Trailer Company. Officer Stuart also ran a license's check and confirmed that the trailer was stolen and it was Mr. Mackey's trailer. Defendant is the owner of Westgate Trailer and Equipment Company.

Officer Stuart then applied for a search warrant in Wright County for Westgate Trailer. He contacted the Wright County Prosecutor, Larry Tyrrell, and told him about the case. The prosecutor told him he had more than enough information to obtain a search warrant. He typed up the information that he had on the application for a search warrant, and presented it to the prosecutor. He wasn't sure when the prosecutor signed it, but he believed that the prosecuting attorney was with him when he went before the judge. The judge read the application and the affidavit, and Officer Stuart swore before the judge as to the truth and accuracy of the information. He recalled that he signed it first, then the judge signed second.

The officer then executed the search warrant. He went to Westgate Trailer after initially going to the Highway Department, where there was a briefing with the officers who were going to assist in executing the search warrant. He sent just two undercover officers initially to the business because a lot of time individuals will destroy evidence if they see a lot of officers coming in. The rest of the officers proceeded about three minutes later. Defendant was there at the business. He was

handcuffed, and placed under arrest for receiving stolen property. The officer read him his Miranda rights, he indicated that he understood, and then he spoke to the officer. Defendant made statements at that time and then later in the day. He admitted that he stole the trailer, but claimed that the owner of the trailer owed him money and he had not been able to collect on the debt. During the search, the officers found a small amount of marijuana and a quantity of methamphetamine. Defendant made statements about his drug use at the Sheriff's Department later that day. They reminded him again of his Miranda rights, and defendant still wanted to talk. He admitted that the drugs found on his person and his personal vehicle were his, and stated that he was a routine user. When asked how much methamphetamine he had, defendant said he did not know, because he never weighed it, but that he normally bought one gram to eight ball quantities.

At this point, the officer had a conversation with defendant about seizing the computer tower at his business. The officer explained that, because the computer was hooked into an alarm system that recorded all the activity at the business, the officers wanted to see if there was any drug activity or evidence of stolen property recorded. Additionally, Officer Stuart told him that all of their undercover officers were now on video, and he feared that this information could be distributed over the Internet. He explained to defendant that there were two options. Officer Stuart could apply for a second search warrant to seize the tower, although he explained that he might not be able to get the warrant. Alternatively, defendant could sign a consent to allow them to search his building and seize the item. Subsequently, defendant signed a consent to search form. While they were talking, the officer asked about the alleged stolen tires. Defendant became upset at that point, and said he wanted to talk to his attorney. Officer Stuart called an attorney upon defendant's request, and after defendant conversed with the attorney, he said that he wished he had not signed the consent form. The officer reminded him that he could withdraw his consent, and defendant then did so.

Officer Stuart contacted a deputy sheriff in Wright County and asked him to radio the Task Force and the Highway Patrol, who were at Westgate Trailer, and tell them to cease searching. The officers had already seized the computer tower, secured the building, and had left. The officer advised defendant that because it was a lawful seizure, they were under no obligation to return the computer tower.

Officer Stuart also testified that he questioned defendant about other stolen items. He also asked why defendant had so many firearms in his business and in his vehicle. Defendant became defensive, said the guns were not stolen, and stated that the handgun was not registered because he purchased it in Texas, where registration was not required. The officers did not seize any firearms on that date, and they were not thinking about or concerned about defendant being a drug user with firearms at that time. His intention was to continue the investigation after that day. He wanted to follow up on the hay rake, and to confirm it was stolen. He found out that the truck driver where the tires were unloaded was in jail in Douglas County. Officer Stuart went and talked to him about the incident.

It was the officer's testimony that a second search warrant was sought, and he provided information to Deputy Wayne Coltrane, who obtained the warrant. The officer assisted in the search of defendant's residence.

On cross examination, Officer Stuart testified that he might have met the confidential source, Steve Nuckles, one time in passing. He did not know anything about him, his criminal history, or his credibility. He acknowledged that he did not mention anything in his report or in the affidavit for the search warrant regarding Mr. Nuckles' claim that defendant was involved in drug trafficking. He admitted that Mr. Nuckles did not disclose his own drug use. Officer Stuart testified that Mr. Nuckles came to him with the information about defendant because he worked for him, and he was

afraid of being implicated. He had cut off the serial number on the hay rake, and knew this probably wasn't legal. Officer Stuart testified that Mr. Nuckles received no compensation for providing this information. He acknowledged that when he made the application for the search warrant, he only mentioned the stolen trailer, even though he had information about other stolen items. He reiterated that he swore before the judge that the statements he made were true. He was not absolutely positive that the prosecutor was with him in front of the judge when he signed the warrant, but he thought he was.

Regarding defendant's possession of firearms, it was the officer's testimony that, at the time, he was not aware of the federal law regarding drug use and the possession of firearms. Therefore, even though he knew the drugs had been found on defendant and in his car, he did not advise him that he shouldn't have the guns. They did not seize any firearms at the search of the business.

With respect to the computer tower, the officer stated that he told defendant that they had an option of applying for a search warrant, but there was no guarantee they would get one. Defendant consented after that conversation. He admitted that he only mentioned his concern about surveillance issues in his report, and that the report and draft were different. The officer acknowledged that there was more information in the draft, but claimed that there had been a lot of problems with typos and paragraphs missing, and he didn't catch this. He admitted that defendant revoked his consent to the search, but that the computer tower was already seized by that time, and it was not returned.

Officer Stuart recalled defendant saying he was a routine user of methamphetamine, but admitted that his draft of that conversation indicated that defendant said he was an occasional user. The draft also contains more information about defendant's drug use than is included in the final report, but he contended that is because a paragraph is missing from the final report. In the report,

it only says that defendant admitted to being in possession of marijuana and methamphetamine at the time of his arrest. It is possible he told him he was an only an occasional drug user. Defendant did not admit that he dealt in stolen property, and the officer admitted that at the time they searched the business, the only stolen property they were positive about was the trailer.

The officer acknowledged that defendant was concerned about his wife finding out about his arrest, and admitted that he told defendant that they were not going to his house with a search warrant. That is because Officer Stuart did not intend to apply for another search warrant. He had no idea that Deputy Coltrane was going to seek a search warrant. The officer denied that he tried to bargain with defendant regarding not searching his house if he gave up the computer tower.

On redirect, regarding the search warrant itself, Officer Stuart reiterated that his signature on the affidavit is followed by the judge's signature, the form references the date, and it says that the officer was duly sworn. Earlier in the affidavit, it also states that he is being sworn upon this oath.

The second witness for the government was Deputy Wayne Coltrane of the Wright County Sheriff's Department. In July of 2004, he assisted in the search at Westgate Trailer. He did not participate in the interview with defendant. He sought a second search warrant for defendant's residence after the first search. He typed the application for the search warrant, using the forms they had in his office. In preparing the search warrant, he ultimately met with the judge. It is standard procedure for the prosecutor to be there when he goes before the judge, which was the case when he applied for the search warrant. He signed his name in front of the judge, but does not remember that the judge actually gave him an oath. His belief was that all statements were true, and that it was his obligation to submit truthful information. The judge signed the search warrant while he was there, and the prosecutor also signed in front of the judge. The form indicates that he was duly

sworn when he signed. The search warrant provided for searching for stolen property because during the search of the business, they located a hay rake stolen from a farm in Hartville. There had been other items taken from the Dolan property and it made sense that there might be more stolen items at the residence. It also included a search for marijuana and methamphetamine and items associated with drug production. Deputy Coltrane was aware of defendant's name being associated with drug use. The caretaker of the Dolan property also said that defendant had been on the property four separate times, and talked about selling some of the property, even though it was in bankruptcy court. The caretaker indicated that defendant's presence was uninvited. The officer stated that he had had prior experience with drug investigations, and he placed this information in his application for the search warrant because he had good faith about seizing this evidence at the scene. He did not specifically state anything in the affidavit about searching for firearms, although there were numerous ones at defendant's residence and they were seized. There were other items dealing with explosives that were also seized. Deputy Coltrane explained that he had spoken with members of the Task Force, specifically Shane Spratt, who advised him of the federal law regarding drug "addicts" being in possession of firearms. [Tr. 72]. He knew that firearms were found during the execution of the first search warrant. The decision was made to seize any firearms that were found during the execution of the second warrant.

On cross examination, Deputy Coltrane testified that he knew defendant prior to this time, but that he never heard that anyone was out to get him. When he went before the judge to obtain the search warrant, he knew the prosecutor was there. He does not remember definitely being placed under oath. He decided to get a second search warrant because of the hay rake that had been seized from Westgate Trailer. He believed it to be stolen because the caretaker identified it. He also believed that there would be other stolen items at the residence because numerous items had been

taken from the Dolan property. He was also influenced to secure the second warrant because of the caretaker's report that defendant was on the property uninvited. He admitted that he had no information that there was Dolan property at defendant's residence. He admitted that marijuana was not found at the house. In terms of the warrant authorizing them to search for items used in the packaging of methamphetamine, the officer testified that this is just generic language that is on their form. He had no reason to think that such items would be there. Regarding the firearms, they were not an issue for him at the time he did the search warrant because defendant was not a convicted felon. He acknowledged that they did mainly seize firearms. They made the decision to seize the firearms prior to the execution of the search warrant. It never occurred to him to seek another search warrant or to add firearms to the one they had. Regarding explosive devices, they found some items that looked like someone had unrolled bottle rockets and put the powder in bottles. He did not agree that this type of item would normally be used in daily farming activities. He did not remember if they found any black powder used for black powder guns.

On redirect, Deputy Coltrane testified that in the search warrant affidavit, there is a paragraph that says that defendant had been found with methamphetamine, marijuana, and three loaded guns. In his experience, drug users will often hide their drug of choice in a vehicle. Because defendant had drugs in his possession, he believed they could also be at the residence.

Turning to the first Motion to Suppress, defendant seeks suppression of evidence and statements based on the search of his business, on the grounds that the search warrant was overbroad, and that the application and affidavit were not properly sworn to and verified.

Regarding defendant's contention that the search warrant was overbroad, the first search warrant provided for the search for a specifically identified tandem axle trailer and other stolen items. As a result of its execution, the stolen trailer, a hay rake, and 35 stolen tires were seized.

Defendant contends that the warrant was overbroad because it authorized a search for "other stolen items." He asserts that there were only a few alleged facts in Officer Stuart's report that the issuing judge might have relied upon to conclude that other stolen items would be found at defendant's business. Further, he contends that there was nothing in the officer's affidavit that states that Mr. Nuckles was reliable or truthful, and that even if he were to be relied upon, it was not alleged that he knew of defendant dealing in or keeping any stolen property at his business, aside from the trailer.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999).

The Fourth Amendment requires that a search warrant describe with particularity the items to be seized. U.S. v. Bieri, 21 F.3d 811, 815 (8th Cir. 1984)(en banc); Andresen v. Maryland, 427 U.S. 463, 480 (1976); Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir.1987). The Court must

examine an application and affidavit in support of a search warrant with a common sense approach, rather than in a hypertechnical fashion. Bieri, 21 F.3d at 815 (citation omitted).

The affidavit in support of the search warrant includes the information regarding the stolen trailer that Mr. Nuckles provided; the fact that he gave the officer a camera that contained photographs of the stolen trailer; the details of where it was stored; the corroborating information that Officer Stuart acquired; the fact that undercover officers saw the trailer at the business; the fact that the officer spoke to the victim of the theft; and the fact that Mr. Nuckles told him that defendant "routinely dealt in stolen property." [Affidavit for Search Warrant].

Having fully reviewed the evidence, the Court finds that there was a substantial basis for the probable cause determination that "other stolen items" would be found at defendant's business, and that the search warrant granting the officers authority to search for such items was not overbroad. The confidential informant provided contemporaneous, first-hand information regarding the stolen trailer. He supported this information with photographs he had taken of the stolen trailer. This information was confirmed by undercover officers going to the business and actually observing the stolen trailer. Officer Stuart procured a stolen trailer report, which matched the trailer at defendant's business, and was told by the Wright County Sheriff's Office that defendant was the suspect in this theft. Officer Stuart also interviewed Mr. Mackey, the victim of the theft. The evidence supports a finding, therefore, that Mr. Nuckles' reliability was well-corroborated. Mr. Nuckles also stated that defendant was routinely involved with stolen property. Additionally, the officer testified that, based on his twenty-six years of experience, it was likely that there was other stolen property at the business.

Under the totality of the circumstances, the Court finds, therefore, that there was a substantial basis to support the issuing judge's finding of probable cause that the trailer and other stolen

property would be found on the business premises. The judge had before her the very specific information about the trailer, which was verified by several methods and sources, as well as Mr. Nuckles statement that, not only had defendant stolen the trailer, but that he also dealt with stolen goods. It cannot be said that there was not ample evidence from which the judge could conclude that probable cause existed to issue the search warrant for the trailer and other stolen goods. The fact that each item was not fully delineated does not negate the fact that the search warrant was valid as issued in this case.

In the second Motion to Suppress, defendant seeks suppression of evidence and statements based on an unlawful search of his residence. He contends that the search warrant was issued without probable cause; that it was defective because the application and affidavit were not properly sworn to and verified; and that the officers exceeded the terms of the warrant by seizing evidence lawfully in the possession of defendant and not authorized to be seized in the warrant. Therefore, he seeks suppression of all evidence and statements.

The application in support of the second search warrant includes information pertaining to the search of defendant's business the day before; the fact that Deputy Coltrane had spoken to the caretaker of the Dolan property, from which the hay rake and other items had been stolen; the caretaker indicated that defendant had been on the property uninvited four times and had discussed selling part of the equipment and giving the money to Mr. Dolan, when the property was in bankruptcy; and the fact that defendant was arrested at his business with methamphetamine on his person and marijuana in his vehicle, along with three loaded weapons. Deputy Coltrane stated that he believed that because defendant had been in the possession of stolen property and controlled substances, it was his opinion that he would find stolen property and controlled substances at his residence. The search warrant was issued, authorizing a search

for stolen property, marijuana, methamphetamine, and/or items used in the production of methamphetamine and marijuana, all persons, and all vehicles. As a result of this search, firearms, ammunition, and explosive materials were seized.

A full review of the evidence satisfies the Court that the second search warrant set forth sufficient facts from which the issuing judge could find that there was a fair probability that the specified items would be found at defendant's residence. The judge was aware of the search of the business the day before; the fact that defendant was found in the possession of stolen items, including a hay rake stolen from the Dolan property; that he had been arrested in the possession of controlled substances; and that other items were missing from the Dolan property, where defendant had suspiciously been on four occasions. Accordingly, this Court finds that, under the totality of the circumstances, there was a substantial basis for the probable cause determination that the delineated items would be found at defendant's residence. Additionally, once the officers were authorized to search for drugs and stolen property, the fact that they discovered illegal firearms and explosive materials on the premises does not render the seizure of those items invalid. Defendant had admitted to illegal drug use, and was therefore prohibited from the possession of these items.

Regarding defendant's contention that the search warrants were defective because the affidavit and application were not sworn to under oath, the Court finds that the evidence adduced at the hearing establishes that this assertion is incorrect. Officer Stuart and Deputy Coltrane both testified that they swore to the affidavits under oath, and their convincing testimony is supported by the recitation of this fact on the affidavits themselves. There is no basis to conclude that there was any defect in this process that would render the search warrants invalid.

Even assuming, however, that the warrants in this case were not based on probable cause

and found to be defective, the Court finds that the good faith exception enunciated in <u>United States v. Leon</u>, 468 897, 922-23 (1984) would apply. It is obvious that both officers relied in good faith on the search warrants signed by a neutral judge. The Court finds that their reliance was objectively reasonable under the facts of this case, and that there is no basis to suppress the evidence on these grounds.

Accordingly, it will be recommended that defendant's Motions to Suppress should be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motions to Suppress should be denied.

/s/ James C. England<br>
JAMES C. ENGLAND<br>
United States Magistrate Judge

Date: 5/24/05